DAYTON POWER & LIGHT COMPANY, Appellee,

v.

[JONES], Dir., Ohio Environmental Protection Agency, Appellant.

[Cite as *Dayton Power & Light Co. v. Jones* (2000), 140 Ohio App.3d 675.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 00AP–602 and 00AP–603.

Decided Dec. 12, 2000.

*Shumaker, Loop & Kendrick, L.L.P., Louis E. Tosi, Michael E. Born* and *Michael A. Snyder;* and *Edward N. Rizer,* for appellee.

*Betty D. Montgomery,* Attorney General, *Bryan F. Zima* and *Eva M. Brault,* Assistant Attorneys General, for appellant.

---

BOWMAN, Presiding Judge.

Appellant Christopher Jones, the Director of the Ohio Environmental Protection Agency ("director"), appeals from a decision by the Environmental Review Appeals Commission ("ERAC") ordering the director to recalculate the 1997 Title V fees for appellee's, Dayton Power & Light Company's ("DP&L"), Killen and Stuart Generating Station facilities. In its decision, ERAC ordered the director to calculate Title V fees based upon the emission of the air contaminant known as PM–10, which is particulate matter that is less than ten microns in diameter, rather than upon the emission of total particulate matter.

The facts underlying this matter are undisputed. As part of the 1990 amendments to the federal Clean Air Act, the United States Congress adopted a comprehensive permitting program for certain facilities that emit air pollutants. This permitting program, which is found in Title V of the federal Clean Air Act, can be delegated to a state if the state adopts a Title V permitting program that meets the federal requirements. In order for a state's Title V program to be approved by the United States Environmental Protection Agency ("U.S. EPA"), the fees collected under the state's Title V program must be "adequate" to support the program.

In response to the 1990 amendments to the federal Clean Air Act, Ohio adopted a federally approved Title V program, including a permit fee program, which requires facilities subject to Title V to pay fees for certain air emissions. See R.C. 3704.036. Ohio law requires each person who owns or operates an air contaminant source subject to permitting under Title V to pay a fee based upon "the total actual emissions" of several "regulated pollutants," including "particulate matter." R.C. 3745.11(C)(1).

In 1994, the Ohio Environmental Protection Agency ("OEPA") stated in a Fact Sheet that, for purposes of determining eligibility and fees under Title V, "particulate matter" meant total particulate matter. In 1993, 1994, 1995, and 1996, DP&L reported total particulate matter in its fee reports for all of its facilities. DP&L was invoiced based on total particulate matter for each of its facilities from 1993 to 1996. DP&L paid those invoices without issue.

On October 16, 1995, the U.S. EPA issued a guidance memorandum that defined regulated air pollutant particulate matter as PM–10 for purposes of Title V. The guidance memorandum stated, in part, as follows:

"Today's guidance should be used to determine which sources of particulate matter are subject to minimum title V requirements and fee calculations. The Federal minimum for applicability of title V to sources of particulate matter should be based on the amount of emissions of PM–10, not particulate matter, that the source has the potential to emit. * * *"

In the wake of U.S. EPA's guidance memorandum, OEPA revised its interpretation of regulated air pollutant particulate matter from total particulate matter to PM–10, for purposes of determining *applicability* of Title V regulation. OEPA continued to collect *fees,* however, on total particulate matter.

On April 15, 1998, DP&L submitted its 1997 fee emission reports for its Killen and Stuart facilities. DP&L reported emissions of PM–10 rather than emissions of total particulate matter. By letter to DP&L dated July 30, 1998, the Portsmouth Local Air Agency, a designated local agency for OEPA, stated that DP&L's 1997 fee emission reports erroneously provided only PM–10 emissions and requested that DP&L correct its 1997 fee emission reports to reflect total particulate matter.

In response, DP&L contended that, for purposes of determining applicability and calculating fees under Title V of the Clean Air Act, U.S. EPA had defined "regulated air pollutants" for particulate matter as PM–10. DP&L further contended that R.C. 3704.036(B) dictated that Ohio's Title V could be no more stringent than the requirements of Title V under the federal Clean Air Act. DP&L therefore took the position that it should be assessed fees on PM–10, rather than on all particulate matter emissions from the Killen and Stuart facilities. Without waiving its argument, DP&L provided information on emissions for all particulate matter at those facilities. On December 23, 1998, OEPA issued invoices to DP&L based on fees for total particulate matter emissions from the Killen and Stuart facilities.

On January 19, 1999, DP&L appealed the invoices to ERAC. ERAC declined to give weight to the October 16, 1995 U.S. EPA memorandum, calling it a mere guidance document. However, ERAC concluded that, under the language of R.C.

3745.11(C) and relevant regulations in the Ohio Administrative Code, the director could only assess Title V fees on PM–10 emissions.

On appeal to this court, the director asserts the following assignment of error:

"The Environmental Review Appeals Commission erred in remanding the issuance by the Director of Environmental Protection of two air emission fee invoices to Dayton Power & Light Company and ordering the Director to recalculate the fees based, not on emissions of particulate matter, but only on emissions of particulate matter of less than 10 microns in diameter (PM–10)."

The appellate standard of review governing this appeal is set forth in R.C. 3745.06, which provides that this court "shall affirm the order complained of * * * if it finds * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." For the reasons that follow, we reverse ERAC's order.

■■ Review of the statute at issue and the applicable defined terms demonstrates that the fees to be assessed for particulate matter, pursuant to R.C. 3745.11, are not limited to the subset of particulate matter known as PM–10. If the language of a statute is unambiguous, then courts must apply the plain meaning of the words used by the legislature. *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St.3d 125, 127, 661 N.E.2d 1011, 1012–1013. R.C. 3745.11(C)(1) provides that "fees shall be assessed on the total actual emissions" of specified regulated pollutants, including "particulate matter." The statute expressly lists "particulate matter," and not PM–10, as one of several regulated pollutants subject to the assessment of fees.

Our conclusion that the plain language of R.C. 3745.11(C)(1) assess fees on particulate matter is further bolstered by applicable definitions in Ohio's administrative regulations. The phrase "actual emissions" is defined in the Air Pollution Control Fees Chapter of the Ohio Administrative Code as "the amount of *regulated air pollutants* emitted from a stationary source during a calendar year." (Emphasis added.) Ohio Adm.Code 3745–78–01(B)(1). "Regulated air pollutant" is, in turn, defined in Ohio Adm.Code 3745–77–01(DD) in part, as follows:

"(2) Any pollutant for which a national ambient air quality standard has been promulgated;

"(3) Any pollutant subject to any standard promulgated under section 111 of the [federal Clean Air Act]."

In rendering its decision, ERAC focused on the definition for "regulated air pollutant" found in Ohio Adm.Code 3745–77–01(DD)(2). ERAC noted that, pursuant to Ohio Adm.Code 3745–17–02(B), the ambient air quality standard for

particulate matter is PM–10. ERAC therefore concluded that the actual emissions upon which fees may be assessed for the regulated air pollutant particulate matter is limited to PM–10. According to Ohio Adm.Code 3745–77–01(DD)(3), however, *particulate matter* is also a regulated air pollutant because it is subject to standards promulgated under Section 111 of the federal Clean Air Act. See Section 60.672, Title 40, C.F.R. (noting that particulate matter is a regulated air pollutant under Section 111 of the Clean Air Act). Because R.C. 3745.11(C)(1) assesses fees on actual emissions, it applies to particulate matter, as particulate matter is a regulated air pollutant as defined under Ohio law.

■ DP&L argues that we should not consider the definition of regulated air pollutant found in Ohio Adm.Code 3745–77–01(DD)(3). Although DP&L apparently does not dispute that particulate matter is subject to standards promulgated under Section 111 of the federal Clean Air Act, DP&L argues that the director waived that argument because he failed to make it during the proceedings before ERAC. We do not agree that the argument has been waived. Ohio Adm.Code 3745–77–01(DD) was at the heart of the proceedings before ERAC, and ERAC's interpretation of that provision formed the basis for its decision. Moreover, as part of our review, we must render a decision that comports with the law, and we will not disregard a relevant provision of the Ohio Administrative Code. See R.C. 3745.06 (establishing the appellate standard of review).

DP&L also argues that an interpretation of R.C. 3745.11 that assesses fees on particulate matter runs afoul of R.C. 3704.036(B), which provides the following:

"(B) The director shall adopt, and may amend, suspend, and rescind, rules to facilitate the implementation, supervision, administration, and operation of the Title V permit program that are consistent with, and no more stringent than, the requirements of Title V of the federal Clean Air Act and 40 C.F.R. Part 70. The rules shall establish at least all of the following:

"(1) Definitions of the following terms, which shall be consistent with, and no more stringent than the definitions in 40 C.F.R. Part 70: * * * 'regulated air pollutant' * * *."

DP&L contends that "regulated air pollutant" is limited to PM–10 in Section 70, Title 40, C.F.R. Contrary to DP&L's argument, however, the definition of "regulated air pollutant" in Section 70, Title 40, C.F.R. *includes* particulate matter and is not limited to PM–10. Section 70.2, Title 40, C.F.R. provides, in relevant part:

"Regulated air pollutant means the following:

"* * *

"(2) Any pollutant for which a national ambient air quality standard has been promulgated;

"(3) Any pollutant that is subject to any standard promulgated under section 111 of the Act[.]"

As we have already observed, particulate matter is among the regulated air pollutants under Section 111 of the Clean Air Act. Indeed, the only authority identified by DP&L that purports to limit the definition of "regulated air pollutant" for particulate matter to PM–10 is the October 16, 1995 U.S. EPA guidance memorandum. That guidance memorandum expressly states that it is "intended solely as guidance," that it is "not final Agency action," and that it "cannot be relied upon to create any rights enforceable by any party." Assessment of fees on particulate matter, therefore, does not run afoul of R.C. 3704.036(B).

Finally, we conclude that OEPA's apparent intention to base Title V *applicability* determination on PM–10 is not relevant to this matter. At issue in this case is the assessment of fees pursuant to R.C. 3745.11(C). The controversy before this court does not involve the applicability of Title V, nor does the fee statute at issue involve a determination of Title V applicability.

For the foregoing reasons, we sustain the director's assignment of error and reverse the order of the Environmental Review Appeals Commission.

*Order reversed.*

DESHLER and LAZARUS, JJ., concur.